Good afternoon. Good afternoon, Your Honors. I may have pleased the court. My name is Lawrence Senecandro, and I represent the appellate Stephanie Murrin. I would like to reserve two minutes for rebuttal. Granted. Thank you, Judge. In order for the government to get the benefit of an unlimited statute of limitations under Section 6501C1, the government has to prove two elements. First, a false or fraudulent return, and second, intent to evade tax. In the 110 years or so since Congress first enacted Section 6501C1, courts have traditionally held that both elements must be met with respect to the same person, the taxpayer. That is the legacy at issue in this case, Your Honors. For the first time in Section 6501C1's century-long existence, in Allen v. Commissioner, the tax court held that one of the elements, intent to evade tax, could be met by a third party. So you have a situation where, essentially in what looks like a conspiracy-type situation, you have one element being met by one party and another element being met by another party, and all of the negative conduct, all of the adverse consequences befalling one person. That's inconsistent with the traditional interpretation that's been given to Section 6501C1. That's inconsistent with the way that the statute should be interpreted, and for that reason, reversal is appropriate. We started out looking at the face of the statute, which has this passive language, right? And we now have Barton Werfer from the Supreme Court that is guiding our interpretation of that language. So haven't times changed? No, Your Honor. The statute absolutely is written in the passive voice, but that doesn't mean that the statute is limitless, because as the Barton Werfer report notes, context matters. And the context in this case shows that Section 6501C1 was enacted at the same time as the fraud statute, Section 6663. And if you look at the Revenue Act of 1918, Sections 250B and Sections 250D, all of that context makes clear that Congress was referring to the intent of the taxpayer. Well, wait a second. Let's look at the structure here. This is a statute of limitations provision. It's not a penalty provision, right? So the pressure to tie it to blame and intent is less. And there are several other provisions that limit the potential liability of good faith or innocent taxpayers, et cetera. So looking at it from the government's point of view where there's fraud, it's harder to track this kind of thing down. Why shouldn't we say, okay, in terms of how long this is open, let's read the passive voice for what it's worth, and then let's deal with limiting or cutting off penalties based on the blameworthiness of the taxpayer herself? Yeah, I would say for several reasons we shouldn't adopt that interpretation. First and foremost, the whole Act rule instructs that we should be interpreting same terms using the same statute consistently. So notwithstanding the fact that one provision of Section 250. What term is getting interpreted differently here? I don't see a subject or a verb in this provision that's getting interpreted any differently. We are referring to the intent of the taxpayer under Section 250 differently. We're referring to the intent of the taxpayer. It doesn't say intent of the taxpayer here. It says the intent to evade tax. That's right. But if you look at Section 250 in comparison to what is now Section 6501A, it's using a definite article. It's referring to the tax, and that tax is most logically inferred to mean the tax that the taxpayer is offering. The intent to evade tax. The tax. Well, the tax after the comma, the tax is referring back to evade tax. It's referring back to the fraudulent intent, Your Honor, under Section 250. 250, I'm looking, are you talking, what's the equivalent number in the IRC here? I'm looking at the predecessor 250. Section 6501C1 is one. Section 6663A is another. Okay. All right. Well, 6663A, imposition of a fraud penalty.  So what is it in here that you're, in C, 6663C talks about the fraud of such spouse. So there are places where they're limiting the scope of the penalty, and not here. I mean, that's just on the contrary. They deliberately included it in some parts of the statute and not in others. Well, Your Honor, Section 6501C, I'm sorry, excuse me, Section 6663, which is referring to the fraud of the spouse, is required by virtue of the rules that apply to joint and several liability. Okay. Okay. So you can have a situation where a fraud penalty is not getting asserted unless both spouses evince fraud. And there are other places, 6664C1 says no penalty for underpayment if the taxpayer acted in good faith. Right. But Section 6664C is a defense provision, Your Honor. Okay. Well, why isn't that good? Why isn't that good enough? Why doesn't that just cut the other way? I'm sorry, Your Honor? Why doesn't that just cut the other way? Why? Like, if you have sections where the actor is identified, why doesn't that cut the other way and say Congress actually intended it to be to apply to someone other than the taxpayer when it doesn't appear? Because it would make no sense if Congress didn't refer to the taxpayer, Your Honor. It makes perfect sense to say the statute of limitations, that's broad. But when we get to penalties and defenses, then we're going to be individualized. Why isn't that a very logical structure? Well, the statute of limitations, specifically in this situation under these facts, is very alike to a penalty. I would say that there's not much of a distinction in purpose at all between the two provisions. Why is that? I mean, the tax liability is owed, right? It's stipulated that there's tax liability. Yeah, there's that. I mean, the deficiency is there. But it's not just the tax that the government is going after here, Your Honor. It's penalties. It's interest accruing for 32 years. Well, so I understand the interest. But if Congress is recognizing that when fraud is involved, it may take the IRS longer to uncover that fraud, regardless of who the source of the fraud was, that tax liability is still owed. Right. So the interest is accounting for those years where the money that was, in fact, owed is being used and could be invested by that taxpayer.  And penalties, this is another story, and we asked you to give some consideration to 66-64. Yes. Both as to the fraud penalty and also as to the accuracy penalty. Yeah. But in referring to the tax, where the tax liability is owed, why shouldn't we read that as the reference to whose tax is at issue, which is separate and apart from the intent to defraud that could be anyone's under the statute? Because the tax, it's inconsistent with the plain language of the statute to argue that one person can evade an obligation that they don't legally have. So the preparer doesn't have the legal obligation to file the return or pay the tax, nor is the taxpayer required to use that preparer. So why then would Congress associate the conception or the idea of evasion to some third party that doesn't have a legal obligation to act? That's the answer, Your Honor, is that the taxpayer is the one that has the obligation to act. And because the taxpayer has the obligation to act here, only the taxpayer can intend to evade the tax. But factually, we know that's not true, right? There are cases like this one where a tax preparer is the one with intent to defraud, right? Or other cases of identity theft, for example. So if we know those, you agree, factually, those things can happen separately, right? Yes, absolutely, Your Honor. Okay. And so why is it so unreasonable to think that in recognizing that, Congress would want the tax that is in fact owed to be collected, but would lift the statute of repose? Because if there's been an intent to defraud, it may take a lot longer to discover that those funds were owed.  And I think the answer to that is Congress has chosen to separately penalize taxpayers and tax return preparers. Congress is not taking a remedy. It is not collecting the tax. It has different remedies to do that in order to collect them from Mr. Howell here, the preparer. Ms. Murren's liability was extinguished under Section 6501 as a statute of repose, as Your Honor recognizes. Well, that's the question we're here to decide, right? Yeah, no, absolutely. But at the same time, assuming that it is, in fact, extinguished because we're dealing with a three-year statute of limitations, and I understand that that is the issue, the government is not without remedy. I mean, the government had a restitution order for $1.2 million against each of Howell and his co-defendants, $2.4 million. The government collected monies under that restitution order. So the claim that Ms. Murren is only being made to pay the correct amount of tax just simply isn't accurate. We don't know that because if restitution payments were made, how do we know that those restitution payments weren't credited against Ms. Murren's liability, and that the government here is receiving a windfall? An additional penalty that Your Honor didn't recognize is non-monetary. I mean, this woman went through and endured an audit, right, with an ex-husband who had been divorced for decades before that. And there's an emotional cost to all of that. And those are the things that Section 6501A and the policy of closure are intended to get at, right? I mean, imagine a situation where you go out. Our system is so complicated that taxpayers have to go out and they have to use tax professionals. So they go ahead and they do that. And unbeknownst to them, that tax professional behaved incorrectly, okay? They changed bank account numbers on a tax return. They diverted a portion of a tax refund. And 30 years later, the Internal Revenue Service comes and says, well, you're liable for the tax. You're liable for all the interests. And we're going to drag this out administratively, changing revenue agents, drag it out through court, right? That's what the policy of closure is intended to avoid. That's the harm that's occurring to Ms. Merton here. And, Your Honors, you already answered this question in asphalt industry, right? In that case, the court held that Section 6501C1 doesn't extend to, in that situation, an agent. The issue here does not appear to have been taken on on the merits considered, argued in those terms. It also is before Bartenwerfer. The terms of 6501C1, the statute wasn't even the same back then, was it? It was the same, Your Honor. It carried over from 1918 to its current incarnation. Okay, it has been amended. It had been amended many times. And in none of those times did Congress ever see fit to amend Section 6501C1. Congress has revisited Section 6501 at least a dozen times. It's added various provisions to Section 6501C1. And in the 80 years or so of jurisprudence that courts have developed, suggesting that Section 6501C1 does not specifically refer to the intent of the taxpayer. Congress has never seen it appropriate to go in and re-amend or amend Section 6501C1. And we can take that legislative acquiescence to mean that Congress agrees the courts were deciding the issue correctly. That's a lot of weight to put on silence here. I mean, has this issue been coming up? Has it been considered? It certainly doesn't seem like an asphalt that this court really focused on the wording of C1 or what C1 meant. It seemed to be entirely in terms of agency attribution. Sure, absolutely, Your Honor. And if the court wasn't willing to attribute and find that fraud of one party couldn't be imputed to the fraud of another party in an agency-type relationship, how then could the court find in this situation where there is no agency relationship that fraud should be imputed? If the court were to find that fraud can be imputed between two non-agents, it would be completely inconsistent with asphalt. But that question, whether a third party could create the liability, whether it would result from the intent of that party, wasn't really the question in asphalt, right? Yes, Your Honor. I saved that amount of time, but may I answer your question? Yes. That's correct, Your Honor. It was not the specific issue. We weren't dealing with a tax return preparer. You were dealing with an employee, owner, shareholder, which in some ways is actually more egregious, right, where if the court wasn't willing to impute fraud from an owner shareholder to a corporation, how then can the court impute fraud from a non-agent to a third party? Thank you. Thank you. Thank you for your rebuttal. Good afternoon. May it please the court, Jacob Christensen for the Commissioner of Internal Revenue. Good afternoon. This nation's tax system depends on taxpayers to self-report and pay the taxes they owe. In the year 2023, the IRS received more than 271 million tax returns, according to its website. So when a fraudulent return is filed, it's near impossible for the IRS to discover and investigate the fraud within three years, given the sheer volume of returns that it receives. And it makes no difference whether the fraudster was the taxpayer or the return preparer. The special disadvantage to the IRS is the same. The government's interpretation of the statute to encompass fraud by a return preparer, as in this case, is the best reading of the plain text of the statute and is supported by substantial policy considerations. Here, the IRS has attributed accuracy-related penalties, and it appears that that was stipulated. Where do you have a situation like this, where the fraud is the intent of a third party? Putting interests aside, do any of the penalty provisions apply? Or does 6664 in the normal course exempt the taxpayer from those penalties? So an innocent taxpayer can always raise the defense of reasonable cause and good faith. That is always a defense, whether it's to accuracy-related penalties or to the fraud penalty. Does the IRS here dispute that that reasonable cause and good faith apply? The issue, as you said, has been stipulated. So what happened in this case is the IRS asserted accuracy-related penalties, not the fraud penalty, but accuracy-related penalties under Section 6662. Well, in making the decision not to apply the fraud-related penalties, is that because in Ms. Murren's case, the good cause and good faith, the reasonable cause and good faith, that exception applies to her? Yes, Your Honor. The IRS will not assert the fraud penalty absent the taxpayer taking part in that fraud or being complicit in the fraud. So if there's reasonable cause and good faith on Ms. Murren's part, then why is the IRS seeking accuracy-related penalties? Well, the reasonable cause defense is, as the regulation says, it's driven case by case, taking into account all the relevant facts and circumstances. So a reasonable cause defense to an accuracy-related penalty, which could be based on mere negligence or a substantial understatement of income, is going to look different than a reasonable cause defense where the underpayment is due to fraud. And what is the government's position as to what was unreasonable or in bad faith in the facts of this case? My understanding is, actually, the record doesn't reveal the basis for the IRS asserting the negligence or the accuracy-related penalties. There were alternative bases for doing that. And this is the notice of deficiency that's in the record on A43 is the imposition of the accuracy or the assertion of the penalties based on, one, a substantial understatement of income tax, two, evaluation misstatement, or three, negligence or disregard of the rules and regulations. And I believe the basis for that is that had taxpayer been diligent, she may have reviewed the returns more carefully. She could have identified instances where entries on the return made no sense. But the record doesn't explain exactly what the basis for the assertion of the negligence or accuracy-related penalty was. What the record does contain is a stipulation by the taxpayer that if the limitations period is open, that the accuracy-related penalties are correct. Taxpayer had the option and certainly could have raised the good faith defense and litigated that issue and could have prevailed on that issue. So that is always available to taxpayers. Your friend on the other side says that if we rule in your favor and affirm the tax court's decision, that that would be inconsistent with asphalt. I assume you disagree with that. Certainly disagree. Can you tell me why that position isn't correct? The asphalt decision, as the questioning has revealed, dealt with the question as to whether the president's fraud could be attributed to the taxpayer. We are not arguing here that Howell's fraud should be attributed or imputed to the taxpayer. That is not the argument. The argument is that the statute's plain language covers and encompasses the fraud of Howell without any imputation of that fraud to the taxpayer. So it's a separate issue. The question is, is Howell's fraud by itself sufficient to trigger the statute? And the government answer is yes. So we're not seeking, unlike the asphalt case, we're not saying that Howell's fraud should be attributed to the taxpayer under some sort of agency principles, which was an issue in asphalt. And asphalt did not consider this question, as to whether a third party's fraud or a return preparer's fraud would be sufficient in and of itself to trigger an extended limitations period. And secondly, in asphalt, the president was not, unlike Mr. Howell in this case, who prepared the returns, the president in asphalt was not involved in the preparation of the returns. The returns in that case were prepared by an outside auditing firm that was unaware of the president's embezzlement, and so therefore prepared terms without realizing that entries were incorrect. So it's distinguishable on its facts as well. Okay. Could you talk about BASR partnership? I mean, I know the federal circuit was splintered somewhat in that, but why, you know, we pause before we split from a fellow circuit, our sister circuit, why should we come out differently? So, again, BASR is also distinguishable on its facts. The attorney who possessed the intent to evade in that case, the court determined was also not involved in the preparation of the returns. There was a separate CPA firm, John Malone, that prepared the returns in BASR, and there was no allegation that either Malone, the return preparer, or the taxpayer in that case had any intent to defraud. And so the federal circuit, in footnote three of the majority opinion, stated that we need not decide whether the intent of some other third party, one more closely connected to the tax preparation than filings themselves, might be relevant. So BASR is factually distinguishable. BASR also noted that Allen would be distinguishable from that case on its facts, for the reason just explained, did not involve fraud by the tax preparer. So. So what are the bounds of the third parties here, the sort of pool of actors that you seem to endorse along with the tax court? How far does that extend and why? Where do we find any boundaries in the text? Yeah, so as the tax court explained, and we think the tax court got it exactly right here, the combination of the two requirements from the statute, the fraudulent return combined with the intent to evade tax, circumscribes the pool of actors whose intent might matter to those who had a hand in preparing the returns. And we agree that's the correct standard. It's similar, actually, to what the Federal Circuit majority decision said in BASR, that a fraud is only committed via submission of a document when a person acting with an intent to defraud makes a false entry on that document. So really, we're looking at return preparers who are involved in preparing the tax returns, who are placing fraudulent entries on the return, causing it to be fraudulent and making it difficult for the IRS to discover the fraud. That's that's really where we're looking. We're not looking at some fraud, for example, by an employee who might embezzle funds from the corporation and cook the corporation's books for his own purposes, which then causes the returns to have false entries. Why would that be? I mean, if we've got a passive voice here, you've said we ought to separate the intent and the false filing. And if the intent is the employee or a tax preparer in either case, and perhaps even more in the case of an employee, it would take the IRS considerable time in funding audits to identify it, more than three years in any event. So why should we draw a line there? So the required intent is an intent to evade the tax. So with an employee who may be embezzling funds, their intent is not to deceive the IRS to lower taxes. Their intent is to obtain their own funds for their own benefit. Now, the fact that they do so could cause when the return preparer, when the taxpayer prepares the returns, those returns could be inaccurate. They could have false information on them. But the employee wasn't, the fraud wasn't directed at the IRS. It wasn't directed to evading the tax. As opposed to a return preparer who prepares returns and places false entries on the return with a specific intent to trick the IRS to lower the tax, to evade the tax. That's what matters under the statute. And that's what intent, with the intent to evade tax means. So that's why I'd be limited in that circumstance. I'm trying to understand how that would be administered. Say you're dealing with a CFO and who you might expect would understand the tax consequences on reporting. But the reason for making false entries, you know, is propping up a business. It's not with an eye toward what that might ultimately do in terms of taxes. Are you saying that the test of whether the statute of repose is three years or is lifted indefinitely requires the IRS or eventually an Article III court to make inquiry into the subjective intent of the person who was conducting the fraud? Well, I think the IRS would first look at who prepared the return. Because, again, that's the pool of actors we're looking at. The people who had a hand in preparing the return. And yes, those are the folks that would be looked at. And if their intent in preparing the return was to evade tax, then the statute would be triggered. So if the CFO was not involved in preparing the tax returns, then the IRS wouldn't be looking at that person. So the person who provides false information to a tax preparer who, in turn, is exercising good faith in preparing and filing the return, that would come back to the original taxpayer. I agree with that. I agree. It would be lacking. Again, that person wouldn't be making entries on the returns with the intent to defraud. Where do we find that in the statute? Say you have an elderly parent who is not preparing their own returns and a child who turns over to the tax preparer false information for the purpose of defrauding the government. There's obviously intent to defraud. It's a false return. You're suggesting in that situation, the three-year statute of repose or statute of limitations would remain intact. I think that's right, Your Honor. Again, I don't think that the court in this case has to decide exactly where that boundary lies, because here we do have the return preparer who prepared the returns and has, as parties have stipulated, that he placed entries on the returns with the intent to defraud. Well, we may not need to decide the whole pool of actors here, but part of the reason that the tax court and you on behalf of the government, I expect, are promoting that is so that there's not just unlimited ability to lift these statute of limitations. Try to cabin this in some way so that there's a tighter fit between the taxpayer and the fraudulent intent. You're doing that in defining the pool of actors, but that's not found in the statute, right? I think that's the effect of the dual requirement in the statute. You have to have a false or fraudulent return with the intent to evade tax. Well, the closest fit, if you want to have both of those, right, the closest fit to the taxpayer is to say that the taxpayer has to have the intent. Certainly, no one disputes that the taxpayer's own fraud would trigger the statute. So if your reading is that we are going to separate those two, we are going to look in isolation at the intent, and it covers third parties, where do we find in the statute any limitation of that pool of actors? Like I said, Your Honor, you don't have a fraudulent return unless the people involved in preparing that return had the intent to evade tax. So that's why the tax court enunciated the standard the way it did, that it's the combination of those two requirements that circumscribes the pool of actors to those who had a hand in preparing the return. I understand that's what the tax court has said, but it seems like that limitation is made out of whole cloth. And I guess I'm wondering if the impetus for that limitation is because there's a recognition of some need to keep the fraudulent intent close to the taxpayer, him or herself, then why shouldn't we be interpreting the statute to require it be the intent of the taxpayer from the get-go? There's no effort to keep the intent close to the taxpayer. That's irrelevant under this inquiry. I'll come back to what the majority in the BASR decision said, that a fraud is committed via submission of a document when a person acting with an intent to defraud makes a false entry on that document. And I think that's right. And that's what we're saying here. When you have a return preparer placing false, fraudulent entries on the return with the intent to evade tax, both requirements are satisfied. So it eliminates people who are not involved in the preparation of the tax return. Congress certainly could have drafted it that way, to limit this to situations that involved a tax preparer. Well, Congress could have inserted the words intent of a taxpayer also, but Congress didn't do that. And given the strict construction that applies under Badraco, the court shouldn't be reading elements into the statute that Congress saw fit not to impose. But you're asking us to read an element of the limitation on who the third party can be. It's not just that there was fraud at some point in what ultimately is a false or fraudulent return. I guess I would disagree. I'm not sure what more to say other than that it's the combination and requirement of both the fraudulent return with the intent to evade tax that circumscribes that pool of actors. Just pressing on that a little bit more. Okay, so in the case of a false or fraudulent return with the intent to evade taxes. And looking at Judge Krause's example, you have a parent who takes over the filings for their parent. You have a child who takes over filing, an adult child who takes over filings for their parent. They intend to evade taxes, but they don't actually do the forms themselves. They give them to a tax preparer. And there's something in the statute, I am trying to understand that too, what precisely in the statute would cause that intent to evade not to count. So is the hypothetical that the parent or the child is providing false information to the CPA? Yes. And then the CPA, without being aware of the false information, is preparing the return? Yes, and the parent signs it. Yeah, right. Now, again, in that case, the return isn't being prepared by the preparer with the intent to evade tax. And so I would say that the statute would not cover that situation. But the statute doesn't say the preparer's intent to evade tax. So you wouldn't have a fraudulent return with the intent to evade tax. Why not? There's a fraudulent return and an actor in that sequence intended to evade tax. Why doesn't that fit squarely into the terms of the statute? I would just say arguably that the CPA's preparation of the return without the intent to evade tax would interrupt that conclusion. I mean, if the court were to disagree and believe that the statute covers that sort of situation, perhaps that's reasonable. But it's not the way that I understand the standard to apply that was adopted by the tax court based on the statutory language. OK, thank you. Your Honor, just to touch on a few things, the government said that BASR is not distinguishable. I'm sorry that it is distinguishable. And the short answer is that it's not. The term tax return preparer is a technical term under the Internal Revenue Code. Section 7701A36 defines the term tax return preparer. This is set forth at length in our briefs. A tax return preparer can include two types of tax return preparers. A signing preparer, that's who the government's talking about, the person that signs the return. It can also include a non-signing preparer. That's somebody who advises about a material portion or a material aspect of the return. That's the issue in BASR. In BASR, you have a lawyer who's advising on a tax shelter. OK, that tax shelter is making up a significant portion of the pedonatis, the BASR taxpayers' tax return. That person is a non-signing preparer. OK, you separately have a signing preparer who didn't commit any fraud. Why? Because he relied on the lawyer's advice, which is very, very common in practice. All right, but to create a distinction between tax return preparers who sign and don't sign is inconsistent with the Internal Revenue Code. That's point one. Point two, the government says that this court doesn't need to define where the boundaries lie. And that's part of the problem with the tax court's ruling. I would also note that by not defining where the boundaries lie, there are opportunities for there to be a lot of inconsistency. OK, it's not just Asphalt. Asphalt dealt with an owner, shareholder, operator of a company. All right, consider the case of Botwinick Brothers of Massachusetts Inc. v. Commissioner dealing with a bookkeeper. OK, consider the case of BASR dealing with a non-signing preparer, a lawyer who advised with respect to a tax shelter. Consider the IRS's own positions in its field service advisories, all set forth in our briefs, OK, dealing with a return preparer, in which the government initially says, no, the fraud of a return preparer isn't sufficient to extend the statute of limitations. Then all of a sudden, six months later, the government reverses course and they say, no, no, no, a tax return preparer is the taxpayer's agent. And therefore, under agency principles, we can attribute the fraud from one person to another. All right, the D.C. Circuit rejected all of that in Loving v. IRS. OK, a tax return preparer is not a taxpayer's agent. Right. If you rule in favor of the tax court, there's a whole lot of reconciliation that needs to go on with existing case law. I see the amount of time, but if I can make one other point. OK, briefly. Thank you. The other point is that these are very basic fundamental principles, that a statute of limitations is three years and that the only thing that's going to extend that statute of limitations is a taxpayer's fraudulent intent. When we start upsetting the apple cart and we start changing what the law has been for the past 110 years, there can be a lot of unintended consequences associated with that. And specifically, I want to note that the Internal Revenue Code is a very elaborate, albeit sometimes Byzantine, compilation of laws. And when you start changing fundamental principles like statute of limitations, there are going to be corresponding consequences on other code provisions like the code provision related to the fraud penalty. The government's not asserting the fraud penalty here. There's absolutely nothing that prevents the government from coming forward in another case when there's not a joint tax return and asserting the fraud penalty. And that should be very, very troubling to this court. The Treasury Regulation 1.6664-4B provides that reliance on an information return, professional advice or other facts, constitutes reasonable cause in good faith if under the circumstances the reliance was reasonable and the taxpayer acted in good faith. So why doesn't that take care of that, at least that particular concern that you're raising? And I think it's twofold. And if you look at every one of these cases that's been decided under this rationale, that's Allen, that's Finnegan, that's Aimee Meschelke, that is Erickson, and that is this case, Mervyn. In every single one of those cases, the government asserted accuracy-related penalties. It did so, oddly, on three separate grounds. The government noted two of them. That's negligence disregard of rules and regulations. That's one. The second one is a substantial understatement of income tax. That's two. The government also asserts in the alternative a substantial valuation misstatement. These are boilerplate items that are ending up on a notice of deficiency. The problem with Section 6660.4-4, Your Honor, is that it doesn't create that escape valve because the second sentence of that regulation specifically advises courts to look at the extent to which the taxpayer tried to ascertain their correct tax liability. And someone like Ms. Murren, not to take anything away from her, she's not capable of understanding. At the age of 20-some-odd years old, she didn't understand what was on a tax return in front of her. She signed what the preparer put in front of her. And that's what a lot of other people in this country do. So that's why the IRS, by default, is going to the penalty. And that's why Section 6664-4 and 6664C isn't an escape valve for the taxpayer. The other perverse effect that you have as a result of looking to the burden of proof to kind of get to what the courts maybe thinks is the right answer in terms of allowing the taxpayer to pay the right amount of tax, look what we're doing on the burden of proof. This is a case involving fraud. Section 7454 tells us that we keep the burden of proof on the taxpayer. But that's not what we're suggesting under Section 6664. Under Section 6664, we're taking that burden of proof, albeit the burden of persuasion, and we're putting it on the taxpayer. And we're saying, hey, you taxpayer, even though there's fraud by somebody else, and you've been made to watch this whole charade that goes on where the government puts on a trial against a fraudulent tax return preparer, now you come forward and you showed us that you actually relied on the advice of that preparer or on the documents that you have. Oh, and by the way, try and do that with respect to 32 years ago. Nobody has records from 32 years ago, Your Honors. And that's part of the inherent fairness, and that's why Section 6501A needs to be interpreted as a statute of repose. Thank you. Thank you. We appreciate our event from both of you this afternoon, and we will take this case under advisement.